UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TONY SCHRECKENBACH, | § § § |
| *Plaintiff* | § § |
| v. | § § § § CIVIL ACTION NO. 4:11-cv-4065 |
| TENARIS COILED TUBES, LLC, | § § § |
| *Defendant.* | § § § |

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion for Partial Summary Judgment

("Defendant's Motion") (Doc. No. 24) and Plaintiff's Motion to Strike (Doc No. 27).

After considering both Motions, all responses and replies, and the applicable law, the

Court concludes that Defendant's Motion should be **GRANTED** and Plaintiff's Motion

to Strike should be **DENIED**.

## I. BACKGROUND

Plaintiff Tony Schreckenbach ("Plaintiff" or "Schreckenbach") brings this suit for

unpaid overtime wages earned by the Plaintiff when he worked for the Defendant Tenaris

Coiled Tubes, LLC ("Defendant" or "Tenaris"). Plaintiff's claims arise under the Fair

Labor Standards Act ("FLSA"). 29 U.S.C. §201 *et. seq*. (¶ 2.) Defendant manufactures

coiled tubing in a range of grades and sizes to be used in onshore and offshore drilling

environments. (Doc. No. 1 [Amended Complaint], ¶ 14.) Tenaris manufactures coiled

tubing that is a continuous length of pipe that is wound on a spool for transportation

purposes (Doc. No. 24-1 [Affidavit of Felix Diaz], ¶ 3.) After the tubing is manufactured in Tenaris' Mill Department, it is wound onto a spool by the Service Department. (*Id.* at ¶ 4.) The Service Department runs twenty-four hours per day, typically five days a week (*Id.* at ¶ 5.) The hourly employees in the Service Department work twelve hour shifts (from 6 a.m. to 6 p.m., or from 6 p.m. to 6 a.m.) The Service Manager, the Assistant Service Manager, and Service Coordinator are the only salaried employees in the Service Department. The Service Manager supervises a salaried Assistant Service Manager, who also works during the day, and a salaried Service Coordinator (Schreckenbach), who worked at night. (*Id.* at ¶ 6.)

Defendant employed Plaintiff from March 2005 until June 30, 2011. During his night shift positions, Plaintiff was employed as Shift Leader II, Production Supervisor, and Night Service Coordinator. (*Id.* at ¶¶ 15, 16; *see also* Doc. No. 24-5, at 15 [Profile for Tony Schreckenbach].) Although Schreckenbach's titles changed during his time at Tenaris, his duties or responsibilities as the manager for the night shift did not change. (Tony Schreckenbach Dep. 54:9-14, October 23, 2012.) While Schreckenbach was on the night shift, he was supervised by Rodney Bond, John Carroll, and after 2008, Felix Diaz. (Schreckenbach Dep. 51:7-25-26:5.) During most of the time that Plaintiff worked on the night shift, he was supervised by Felix Diaz. (Doc. No. 25-1, ¶ 4.) The salaried employees, including Diaz and Schreckenbach, did not work twelve hour shifts, but worked variable hours depending on the demand of the job. (*Id.* at ¶ 6.) Schreckenbach typically arrived at the plant anywhere between 3 p.m. in the afternoon and 8 p.m. in the evening, and left work between 1 a.m. and 4 a.m in the morning." (Doc. No. 24-6—24-29 [Gate Log].)

2

Plaintiff moved to the day shift in October 2010, and worked for the Production and Planning Department under James Hyde. (Doc. No. 25-2, ¶ 16.) During the first three months on the day shift, Plaintiff worked on a scheduling program for the service department, which consisted of his entering information into an excel document. (James Hyde Dep. 19:5-16, November 3, 2012; Doc. No. 25-2, ¶ 16.) Plaintiff later undertook a range of other duties on the day shift, including inventory and distribution of strip inventory and string designs. (Hyde Dep. 14:4-21.) Plaintiff also spent one month in 2011 working with outside vendors, scheduling trucks to bring material to the plant. (*Id.* 15:9-16.)

Plaintiff alleges that he routinely worked more than forty hours per week for Defendant, but Defendant did not pay Plaintiff for his hours of work in excess of forty at one and a half times his regular rate, as required by FLSA for non-exempt employees. 29 U.S.C.A. § 207 (2)(c)  (¶ 22). Plaintiff alleges that Defendant misclassified him as an exempt employee and he seeks to recover overtime. Plaintiff claims that Defendant knowingly, willingly, and/or with reckless disregard carried out its illegal pattern or practice regarding overtime compensation. Plaintiff seeks declaratory relief, back pay, liquidated damages, attorney's fees, and taxable costs of court pursuant to 29 U.S.C. §216(b), for Defendant's willful failure to pay overtime wages to Plaintiff in the course of his employment with the Defendant.

Defendant is not moving for summary judgment for the entire time that Plaintiff was on the job. Rather, Defendant believes exemptions to FLSA apply during the entirety of the night shift, during the first three months of Plaintiff's day shift, after Schreckenbach was transferred to the Production and Planning Department, and during

the one-month period in 2011 when Schreckenbach was responsible for scheduling the delivery of materials to the plant.

## II. LEGAL STANDARD

Summary judgment is warranted where a party establishes that there is no genuine dispute about any material fact and the law entitles the party to judgment. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of demonstrating that there is no actual dispute as to any material fact of the case. Fed. R. Civ. P. 56(a), *Willis v. Roche Biomed. Lab.,* 61 F.3d 313, 315 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).

Furthermore, the summary judgment standard "provides that the mere existence of *some* factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be *genuine* and *material*." *Willis*, 61 F.3d at 315. First, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law are material." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Second, a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 248). While all justifiable inferences should be drawn in the nonmovant's favor, conclusory affidavits will not suffice to create or negate a genuine issue of fact. *Anderson,* 477 U.S. at 255; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Shaffer v. Williams,* 794 F.2d 1030, 1033 (5th Circ. 1986).

## III. ANALYSIS

## A. Motion to Strike

Before considering the merits of Defendant's motion, the Court considers Plaintiff's Objections and Motion to Strike Defendant's Summary Judgment Evidence. Plaintiff objects to paragraph 7, 10, and 13 of Felix Diaz's declaration, and paragraph 5 of Laura Vandyk's declaration. The Court finds the paragraphs to be competent summary judgment evidence, and thus overrules Plaintiff's objections and denies his Motion to Strike.

Plaintiff objects that in paragraph 7 Felix Diaz states that Schreckenbach "did not work a strict twelve hour shift like the hourly employees." (Doc. No. 24-2, ¶ 7.) Plaintiff argues that, because Diaz did not work the same shift as Schreckenbach, he was not in a position to see the hours that Schreckenbach worked. Diaz does not purport to have personal knowledge of the hours Schreckenbach worked because he did not monitor his hours. (Doc. No. 24-2, ¶ 7.) However, Diaz did not need to work the same shift to know that Schreckenbach's job did not require a strict twelve hour shift. Diaz's declaration makes it clear that he was aware the Service Manager, Assistant Service Manager, and night Service Coordinator did not work twelve-hour shifts like the hourly employees. *Id.* Diaz anticipated Schreckenbach to work fewer hours if his workload was light, and expected to stay longer if the work required it. *Id* at ¶7. Furthermore, Schreckenbach does not contest that he worked varying hours. For example, Plaintiff introduces evidence in his Response to the Defendant's Motion that he worked from 4:00 to 5:00 p.m. until midnight, depending on the day. (Gustavo Tapia Dep. 26:3-9, October 11, 2012.) Additionally, Defendant presents the security gate records to establish Schreckenbach's varying work hours. (Doc. No. 24-6 to 29.) Because Diaz had sufficient personal knowledge of Schreckenbach's job to conclude he worked varying hours, and because

there is no dispute that Schreckenbach did not work a strict twelve hour shift, the Court overrules Plaintiff's objection to this paragraph.

Plaintiff next objects to paragraph 10 of Diaz's declaration, where Diaz states that the spooling schedule "frequently has to be adjusted during the night shift due to unforeseen developments, such as urgent customer orders received during the night or production line malfunctions." (Doc. No. 24-2, ¶ 10.) Once again, Plaintiff objects that Diaz was not present during the night shift and thus not able to witness changes being made to the spooling schedule. However, Schreckenbach's own declaration is that he communicated with Diaz about making changes to the spooling scheduling during the night. (Doc. No. 25-2, ¶ 9.) Additionally, Diaz would create the spooling schedule before the start of every night shift, and if any issues came up, Schreckenbach would have to wait for Diaz to come back in the morning (*Id.* at ¶ 9; Doc. No. 24-2, at ¶ 10.) Based on this evidence, the Court finds Diaz had personal knowledge of the spooling schedule, and Plaintiff's objection is overruled.

Plaintiff also objects to paragraph 13, where Diaz states his knowledge of the discipline Schreckenbach administered to other employees. But Schreckenbach's declaration confirms that he had communications with Diaz about corrective actions that Schreckenbach took on the night shift, and it was Diaz who wrote down these reprimands. (Doc. No. 25-2, ¶ 4.) Plaintiff's objection on this point is overruled as well.

Finally, Plaintiff objects to a portion of Laura Vandyke's declaration. Vandyk is the Compensation Manager for Tenaris, and oversees compensation and benefits. (Doc. No. 24-4, ¶ 2.) In paragraph 5, Vandyk states that she "learned that Schreckenbach was in charge of the Service Department at night, supervised the work of the employees in the

Service Department, and made recommendations regarding employee discipline and termination that were given weight by the Service Manager. Based on this information, [she] determined that Schreckebach (sic) satisfied the executive exemption." *Id.* Plaintiff argues that Vandyk makes an improper legal conclusion and had a lack of personal knowledge. Plaintiff also argues that the statement is hearsay. Plaintiff's objection is overruled because Defendant offers the statement to show Vandyk's state of mind in making the decision. *Wallace v. Texas Tech. Univ.,* 80 F.3d 1042, 1048 n.4 (5th Cir. 1996) (communications about plaintiff to decision-maker were not hearsay because they were offered as proof of decision-maker's motive in terminating plaintiff); *Culwell v. City of Ft. Worth, Tex.,* 503 F. Supp. 2d 813, 816 n.3 (N.D. Tex. 2007) (admitting portions of supervisor's affidavit relating events involving the plaintiffs of which the supervisor had no personal knowledge because those portions were relevant to show the supervisor's motive for his decision to terminate the plaintiffs.) Defendant is not offering Vandyk's classification of Plaintiff as exempt as a legal conclusion, but rather to refute the contention that its actions were willful and to demonstrate its good faith effort to classify employees in compliance with FLSA. This Court recognizes that employers routinely have to classify employees as exempt and non-exempt for pay purposes. Courts routinely find that employers have misclassified their employees, but not that it was improper to classify the employees in the first place. *See, e.g., Stokes v. BWXT Pantex, L.L.C.*, 424 F. App'x 324, 327 (5th Cir. 2011); *Valcho v. Dallas County Hosp. Dist.*, 658 F. Supp. 2d 802, 808 (N.D. Tex. 2009); *Chicca v. St. Luke's Episcopal Health Sys.*, 858 F. Supp. 2d 777, 780 (S.D. Tex. 2012). Thus, Plaintiff's objection regarding Vandyk's declaration is overruled as well.

**B. Summary Judgment Motion**

In Defendant's Motion, Defendant argues 1) Schreckenbach was subject to the executive exemption when he worked as the Night Service Coordinator; 2) Schreckenbach was subject to the administrative exemption when he was responsible for designing a new program to schedule the work performed by the Service Department; 3) Schreckenbach was subject to the administrative exemption when he was responsible for scheduling the delivery of materials to the plant, 4) The two year statute of limitations should apply because Tenaris did not commit a willful violation of FLSA, 5) Tenaris establishes its "good faith" defense as a matter of law, and 6) The Fluctuating Workweek Method should be used to compute overtime. The Court will address each issue in turn.

**1. Night Shift Position**

Though the FLSA establishes a general rule that employers must pay their employees overtime compensation, executive, administrative, and professional employees are exempt. *Moore v. Hannon Food Serv., Inc.*, 317 F.3d 489, 492 (5th Cir.), (citing 29 U.S.C. § 213(a)(1)); *see also Belt v. EmCare, Inc.*, 444 F.3d 403, 407 (5th Cir.2006); *Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261, 264 (5th Cir.2000); *Dalheim v. KDFW–TV*, 918 F.2d 1220, 1224 (5th Cir.1990). "These exemptions are construed narrowly against the employer, and the employer has the burden of proving that an employee is exempt." *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 402 (5th Cir.2002) (citing *Dalheim*, 918 F.2d at 1224); *accord Songer v. Dillon Res., Inc.*, 618 F.3d 467, 471 (5th Cir.2010); *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 584 (5th Cir.2006); *Singer v. City of Waco*, 324 F.3d 813, 820 (5th Cir.2003).

Defendant argues that Schreckenbach's night shift position was a management position, and thus meets the executive exemption as a matter of law. An employee meets the definition of an exempt executive employee under FLSA where: (1) the employee is paid a salary or fee at a rate of not less than $455 per week; (2) has the primary duty of management of a customarily recognized department or subdivision; (2) regularly directs the work of two or more employees, and (4) has the authority to hire or fire employees, or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).

Plaintiff does not contest element (1)—that he was paid more than $455 a week or element (3), that he supervised more than two employees. Thus, the Court considers whether Schreckenbach's primary duty was management. Under the FLSA statute, management generally includes, but is not limited to, activities such as the following:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102; *Gellhaus v. Wal-Mart Stores, Inc.*, 769 F. Supp. 2d 1071, 1079-80 (E.D. Tex. 2011).

An employee's primary duty is "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). In applying this definition, we look

to the aspect of the employee's job that is "of principal value to the employer." *Dalheim*, 918 F.2d at 1227. Defendant produces evidence that Schreckenbach's primary duty was to establish a management presence for after hours service work. At night, the Service Department consisted of Schreckenbach (the only salaried employee) and approximately twenty hourly employees, including the forklift drivers.  (Doc. No. 24-1, ¶¶ 5, 8.) Defendant argues that Schreckenbach was free from direct supervision because his supervisor did not work when he worked. (Doc. No. 24-1, ¶ 8.) The requirements for the night Service Coordinator included three years experience in a supervisory position and excellent supervisory skills.  ([Staffing Request form]; Doc. No. 24-4, at 12.) The duties and responsibilities included:

> direct supervision of all spooling, hydrotest and forklift operations during night shift, make necessary changes to work schedule and ensure that changes are communicated to the workforce, assist workforce in trouble-shooting and repairs of equipment, ensure that all safety and operational procedures are complied with, enter data into computer database and generate reports, obtain information from inventory database to support operations and various other supervisory duties as assigned by management.
> *(Id.)*

Because Schreckenbach was the highest level employee at the plant at night, Tenaris provided him comprehensive three-month training on all of the plant's operations. (Schreckenbach Dep. 96:4-7; Doc. No. 24-5 [Training Schedule]). According to his own deposition and resume, Schreckenbach also performed the following duties:

- He ensured that the hourly employees in the Service Department at night used the tools properly and efficiently.  (Schreckenbach Dep. 72:11-18)
- He provided necessary supplies to the hourly employees.  (*Id.*)
- He checked on the hourly supervisors to make sure they were doing their jobs.  (*Id*. 61:5-8)

- He directed the hourly supervisors to instruct hourly employees to wear the proper safety equipment when it was not being worn.  (*Id*. 135:16-23.)
- He handled reports from the hourly supervisors regarding equipment malfunctions.  (*Id*. at 62:14-20.)
- He generated, reviewed, and corrected routing plans and other work orders.  (*Id*. at 74:23-75:3.)
- He approved requests from hourly employees to leave the plant early. (*Id*. at 183.)
- He reviewed and prioritized the work performed by the Service Department.  (Doc. No. 24-5, [Resume].)[1]
- He ensured that the workers complied with company policies.  (*Id*.)
- He reported safety and environmental hazards and corrected when possible.  (*Id*. at 2.)
- He ensured compliance with operational procedures per customer work orders.  (*Id*. at 1.)

Defendant also produces evidence that Schreckenbach's salary was significantly higher than the hourly employees. The FLSA regulations instruct this Court to examine the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. 29 C.F.R. § 541.700(a); *Rainey v. McWane Inc.*, 314 F. App'x 693, 695 (5th Cir. 2009). Schreckenbach was paid nearly $60,000 per year in base salary, plus bonuses. (Doc. No. 24-4, ¶ 7) In contrast, employees who performed data entry were paid around half of what Tenaris paid Schreckenbach. The Court finds that Tenaris has provided ample evidence that Schreckenbach's primary duty was management, and that he was paid more than the typical hourly employee because he was assigned to those duties.

Plaintiff responds by claiming he was not really in charge during the night shift— his sole responsibilities were to observe and report the hourly employees' behavior on the

---

[1]  Schreckenbach testified that the resume he created describing his duties and responsibilities at Tenaris was truthful and accurate.  (Schreckenbach Dep. 50:8-13.)  Schreckenbach represented to his current employer that he performed the job duties described in his resume.

night shift, and to remind the hourly employees of policies and instructions that had already been announced by Tenaris' management. (Doc. No. 25-1, ¶ 12.) Plaintiff claims that his work was closely overseen by Mr. Diaz and Mr. Keene (the assistant manager), and that he could not make changes to the spooling schedule, decide employee disciplinary issues on his own, or decide what instructions the night shift crew needed to hear on his own. (Doc. No. 25-1, ¶¶ 7, 9, 15.) However, even if higher level managers were involved with some of Plaintiff's tasks, the presence of all his other management-related duties supports the conclusion that he was primarily engaged in exempt, executive work.

The fourth element of the executive exemption test requires that the employee have "the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(4). Factors that the court may consider in making this determination include, but are not limited to:

> whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. *Id.*

Both sides agree that Schreckenbach monitored employee behavior for disciplinary purposes. Defendant argues that, when Plaintiff observed a situation where he believed discipline or termination was needed, Schreckenbach had the authority to make recommendations regarding employee discipline, including termination. (Schreckenbach Dep. 185:20-186:4; Felix Diaz Dep. 94:23-25, 97:5-17, November 3, 2012.)  Plaintiff argues that he did not have any discretion to make or change company

policy, or to change the way policies applied to different employees. Exh. A, Schreckenbach Decl., ¶4. Plaintiff also did not decide what disciplinary action to take against employees who broke the rules, or typically issue corrective action reports. *Id.* Plaintiff argues that he was told a number of times that it was not his place to reprimand employees on his own initiative.[2] However, the fact that Plaintiff was not authorized to issue written reprimands and change polices on his own does not mean that his suggestions were not given the appropriate weight. If final decision-making authority were the test for determining whether a person was an executive or administrative employee, few would ever qualify as such an employee under the regulations. *Kastor v. Sam's Wholesale Club*, 131 F. Supp. 2d 862, 867 (N.D. Tex. 2001); *Williams v. Vynckier Enclosure Sys., Inc.*, No. H–04–3223, 2005 WL 2810709, at *9 (S.D.Tex. Oct. 27, 2005) *cited in Gellhaus v. Wal-Mart Stores, Inc.*, 769 F. Supp. 2d 1071, 1082 (E.D. Tex. 2011). An employee's suggestions or recommendations may still have "particular weight" even if a higher manager's recommendation has more importance and even if the employee does not make the ultimate determination. *Id.* § 29 C.F.R. § 541.105. Furthermore, Schreckenbach cannot testify as to any occasion when he recommended discipline and his recommendation was not followed.  (Ex. D, Schreckenbach Dep. at 185-86.)

The Court finds that the record in this case contains adequate evidence to show that Schreckenbach's recommendations about discipline, hiring, and firing of employees were given particular weight, and that the evidence put forth by Plaintiff is not sufficient to create a material fact issue. Thus, Tenaris has satisfied its burden of establishing that

---

[2] Schreckenbach states in his declaration that he was reproached after reprimanding an employee for sleeping on the job, and telling an employee that working on the weekends was mandatory to finish important work. (Doc. No. 25-1, ¶¶ 5, 6)

Schreckenbach met the executive exemption test while employed as a Night Shift Coordinator.

**2. Day Shift Position Under James Hyde**

After October 2010, Schreckenbach was transferred to the Production and Planning Department where he worked the day shift under James Hyde for three months. According to Defendant, he was responsible for designing a new program to schedule the work performed in the Service Department. Plaintiff disagrees with this characterization of his job and states that he was not in charge of a new program, except in the sense that Plaintiff took an Excel spreadsheet and entered the information that used to be entered into the Fast Track computer program. (Doc. No. 25-1, ¶ 16.) Both sides agree that the product Schreckenbach produced was ultimately never used to create a new program.

Defendant claims that Plaintiff was subject to the administrative exemption for the three months he worked on this "new program." An employee meets the definition of an exempt administrative employee under FLSA where: (1) the employee is paid a salary or fee at a rate of not less than $455 per week; (2) the employee's primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) the employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200.

Again, there is no dispute that Plaintiff was paid more than $455 per week during this time, nor is there a dispute that Plaintiff's job consisted of non-manual office work. The dispute is whether the employee's primary duty was management related, and whether he exercised discretion and independent judgment in completing the work.

Defendant argues that Plaintiff was selected for this job once Tenaris decided to consolidate all the scheduling responsibilities into one computer program so that the plant's operations could run better. (Hyde Dep., 24:3-24.) Traditionally, the Service Department scheduled the work performed in its department and the Production and Planning Department scheduled the jobs in the Mill Department.  (*Id.* at 12-8:13.)  The spooling schedule was created using a computer program called Fast Track, while the milling schedule was created using Microsoft Excel.  (*Id*. at 24:3-24)  Hyde tasked Schreckenbach with developing a way to schedule the Service Department in Excel so the Service Department's schedule could be linked and integrated with the existing scheduling system that the Production and Planning Department used.  (*Id*.) This responsibility meets element (2) of the administrative exemption. Work need not involve the formulation of management policies or the operation of a business as a whole in order to qualify as work of "substantial importance." 29 C.F.R. § 541.205.  In this case, Plaintiff's assignment to reformulate the scheduling system was broad enough to qualify as work related to the general business operations of Tenaris, and of substantial importance to management or operations.

The third element for the administrative exemption requires that the exempt employee exercise "discretion and independent judgment" in his work. Hyde gave Schreckenbach no specific instructions on how to carry out the responsibility of creating a new scheduling system.  (*Id*. at 20:3-9.) Plaintiff does not dispute this fact. In his declaration, Plaintiff characterizes his job as taking the information that used to be in a Fast Track computer program and entering it into an Excel spreadsheet. (Doc. No. 25-1, ¶ 16.) In his deposition, he described the job in more detail, stating that he would correlate

the orders that were all lined up for the Rafter and the Abbey to know what days they were milling on. (Schreckenbach Dep. 151:23-152:15). Furthermore, Plaintiff was asked to prearrange and forecast a spooling schedule, something that he found difficult given his experience level.[3] (*Id.* 151:3-12; 152:9-14.) Based on Plaintiff's own deposition testimony, his task required more independent judgment than simply transferring numbers from one program to another. Although the court must resolve all factual inferences in favor of the nonmovant, the nonmovant cannot manufacture a disputed material fact where none exists. *Russell v. Harrison,* 736 F.2d 283, 287 (5th Cir.1984).

      Plaintiff's arguments are not persuasive in creating a genuine issue of fact. Schreckenbach continues to argue that are that (1) there was never any new program because the excel document he created was never used, and (2) it only took three months,

---

[3] The following is an excerpt from Schreckenbach's deposition:

Q: So let's talk about what went into the spooling schedule. You said there's—it's—I mean, what's on there? There's an estimate of the amount of time a project's going to take?

A: No. I couldn't do that either. I never had the experience to estimate how long a 16,000-foot string could mill with five indications. I just—I don't have the knack for that. If you sit and do the job, they, yes, you can do it. But they didn't know that about me on night shift. (Schreckenbach Dep. 151:3-12.)

--

Q: What—what did you put into the spooling schedules that you created?

A: Stuff from the mill, the string design information.

Q: What stuff? I mean, what is that, for the—

A: The strings, the orders that were all lined up for the Rafter and Abbey. I would correlate them so he—he knew that they were milling in –on these days. But you don't know the—the other information until after the string mills like the NCR's stuff that could help out the service department so they could know which lines to situate them.

      So when you're trying to prearrange a spooling schedule and line stuff up that hasn't even milled yet or fabricated, it's kind of redundant to work on something and forecast something from the future that you don't know, they might change on their milling schedule. (*Id.*152:1-14.)

and he worked on other tasks during that time. Although there was no end product created from Plaintiff's work, that does not negate the fact that he was working on an administrative task during that time. Additionally, the contention that he worked on other tasks while creating the spreadsheet directly contradicts his deposition testimony. In his deposition, Plaintiff states that he did not do anything else during the first three months other than work on the spooling schedule. (Schreckenbach Dep. 152:15-18.) The nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony. *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 894 (5th Cir.1980). The Court finds that Plaintiff's task required his discretion and independent judgment, and that the overall record is adequate to determine that Schreckenbach qualified for the administrative exemption during his first three months in Production and Planning.

Finally, Defendant argues that Schreckenbach qualified for the administrative exemption for a one month period in 2011, when he was in charge of scheduling the delivery of material from outside vendors. (Hyde Dep. 15:11-16.) Schreckenbach had to take information about upcoming orders and use his judgment to determine when materials needed to be delivered. (*Id*. at 35-36.) Although Schreckenbach had guidance on *what* materials needed to be delivered, he had to use his judgment to determine *when* the materials needed to be delivered. (*Id*. at 35-36.)

Schreckenbach counters with a single sentence in his affidavit that he "did not decide when materials needed to be delivered to the plant." (Doc. No. 25-1, ¶ 17.) However, conclusory statements in an affidavit do not provide facts that will counter summary judgment evidence, and testimony based on conjecture alone is insufficient to

raise an issue to defeat summary judgment. See *Lechuga v. Southern Pacific Transportation Co.*, 949 F.2d 790, 798 (5th Cir.1992); *Roberts v. Cardinal Services, Inc.*, 266 F.3d 368, 376 (5th Cir. 2001); *In re Hinsley*, 201 F.3d 638, 644 (5th Cir. 2000); *Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997).

Schreckenbach also alleges that other individuals at Tenaris placed orders for certain items. Schreckenbach offers testimony from Toan Nguyen, a welder in the Service Department, who states that other employees ordered fittings that the Service Department put on the end of coils. (Toan Nguyen Dep. 6:10-14, November 26, 2012). However, this evidence does not controvert the fact that Schreckenbach decided *when* to place orders. The Court finds that there is no genuine issue of material fact that Plaintiff qualified for the administrative exemption while scheduling deliveries to the plant.

The Court has found that Plaintiff was exempt for most of his time at Tenaris. However, the Court next addresses the statute of limitations and overtime calculation method that are applicable because Defendant is moving for partial rather than complete summary judgment for the period of Schreckenbach's employment. Defendant argues that Schreckenbach qualified for exemptions for the entirety of his night shift, the three months after he moved to Production and Planning (roughly October 2010 to December 2010) and for one month in 2011. Since Schreckenbach worked until June 2011, that leaves approximately five months as to which the Court has not ruled that Plaintiff was exempt from the FLSA requirements. (Doc. No. 31 and 32.) For these five months, Defendants do not argue that Plaintiff would have qualified for any exemption.

**3. Statute of Limitations**

The statute of limitations in FLSA actions is two years, except for "willful" violations, in which case it is three years. 29 U.S.C. § 255(a). The statute of limitations in a FLSA case is calculated as a two or three year "look back" period from the date the lawsuit was filed. *Valcho v. Dallas County Hosp. Dist.,* 658 F. Supp. 2d 802, 808 (N.D. Tex. 2009); *Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 923 (E.D. La. 2009). Plaintiff filed his lawsuit on November 21, 2011. Thus, the statute of limitations began to run on November 21, 2009, or November 21, 2008 if Schreckenbach establishes a willful violation.

The Court has already found summary judgment appropriate on Plaintiff's employment dating up until December 2010. Thus, the question of which statute of limitations applies is essentially moot. However, it is clear that Plaintiff has not created a fact issue that Tenaris willfully violated the FLSA. The burden of showing that a FLSA violation was "willful" rests with the plaintiff. *Stokes v. BWXT Pantex, LLC*, 424 Fed. Appx. 324, 326 (5th Cir. 2011). An employer willfully violates the FLSA where "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [Act]." *McClaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). If an employer acts reasonably in determining its legal obligations, or even unreasonably but not recklessly, its action cannot be deemed willful. *Id.*

The willfulness standard is a formidable one because the FLSA's two-tiered statute of limitations "makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations." *Id.* at 132. Willfulness may be established where management admits that it *knew* it was violating the FLSA. *See Singer v. City of Waco*, 324 F.3d 813, 821-22 (5th Cir. 2003) (upholding a jury

19

finding of willfulness where the employer admitted that it knew its employees were being paid incorrectly and the employer's attorney advised the employer not to investigate). Similarly, willfulness may be established with evidence that a company continued its compensation practices after being informed by the Department of Labor that its practices violated the FLSA. *See Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994) (upholding a district court's finding of willfulness where the employer was notified by a government representative that its payment practices violated the FLSA and the employer continued those practices without further investigation). But willfulness is not established when the employer acted negligently or even unreasonably. *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407 (5th Cir. 1990). An employer who makes a "good-faith but incorrect assumption that a pay plan complied with the FLSA" does not commit a willful violation. *McClaughlin v. Richland Shoe Co.*, 486 U.S. at 135.

Defendant has provided evidence to establish an absence of willfulness. In initially classifying Schreckenbach as exempt, Tenaris relied on the fact that Schreckenbach was to serve as the sole manager in the Service Department on the night shift. (Doc. No. 24-4.) Then, in early 2009, Laura Vandyk, Tenaris's Compensation Manager, evaluated Schreckenbach's exempt classification as part of the "Cluster I" project. (Doc. No. 24-4, at 2, ¶ 4-5 [Vandyk Decl.]) The "Cluster I" project evaluated the job titles and classifications of approximately 900 salaried employees at Tenaris and other subsidiaries of Tenaris's parent company. (*Id.* ¶ 4.) Vandyk obtained information about the employees' duties and responsibilities from managers and other knowledgeable persons, and evaluated those duties and responsibilities in light of information about the FLSA exemptions published by the Department of Labor on its website. (*Id.*) Vandyk

interviewed Schreckenbach's plant director and supervisor until 2008, and determined that Schreckenbach satisfied the executive exemption. (*Id*. ¶ 4.) In instances where Vandyk found that an employee had been improperly classified, Tenaris reclassified the employee and retroactively compensated the employee for past overtime. (*Id*. ¶ 6.)

Plaintiff argues that, when Plaintiff was laid off by Tenaris, Plaintiff spoke to Irma Cromer, a Human Resource representative, who told Plaintiff that she believed Tenaris had made a mistake by failing to pay Plaintiff for overtime. (Doc. No. 25-1, ¶ 18.) Plaintiff alleges that even after his conversation with Cromer, Tenaris never tried to correct the violation by paying Plaintiff's back overtime wages. *Id*. However, Plaintiff's declaration contradicts his deposition testimony, where he states that there were no conversations with Cromer after 2010. The conversation Schreckenbach claims he had with Cromer would have happened in 2011, when he was laid off. (Schreckenbach Dep. 29:11-18; 41:2-6.) Plaintiff's declaration does not explain the contradiction and is insufficient to create a fact issue. *See Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 482-83 (5th Cir.2002) (noting that party may not create fact issue by submitting an affidavit that contradicts, without explanation, prior deposition testimony); *Williams v. Lyondell-Citgo Ref. Co.,* 247 Fed. Appx. 466, 469 n.3 (5th Cir. 2007) (where plaintiff offered affidavit stating that he had conversation with another employee about the denial of his FMLA leave, but testified in his deposition that he did not have the conversation, the affidavit was disregarded); *S.W.S. Erectors, Inc. v. Infax, Inc*., 72 F.3d 489 (5th Cir. 1996) (disregarding description of conversation in affidavit because it contradicted the witness's description of the conversation in an earlier deposition.) Plaintiff also provides no evidence of Cromer's job duties, her knowledge of Schreckenbach's job duties, or her

familiarity with the FLSA. Cromer's comment, even if it was made, does not demonstrate that Tenaris knowingly misclassified Schreckenbach. The Court finds that a two year statute of limitations is applicable since Tenaris did not willfully violate FLSA.

**4. Tenaris's Good Faith Defense**

Under the FLSA, if an employer is found to have misclassified an employee as exempt, the employer may be liable for liquidated damages in an amount equal to the amount of unpaid overtime. 29 U.S.C. § 216(b). Because the Court has found that Schreckenbach was properly classified as exempt, Tenaris is not liable for liquidated damages.

**5. Fluctuating Workweek ("FWW") Method to Calculate Overtime**

The FWW Method applies to the computation of overtime in a misclassification case "when the employer and employee have agreed on a fixed salary for varying hours." *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138-39 (5th Cir. 1988) (citing 29 C.F.R. § 778.114). The FWW Method is premised on the idea that, when the parties have agreed on a fixed salary for varying hours, the employee's fixed salary is intended to be the employee's straight time compensation for all hours worked in the workweek. *Blackmon*, 835 F.2d at 1138-39. If, in litigation, it is determined that the employee was misclassified as "exempt," the employee is only entitled to the additional half time for hours worked in excess of forty (and not time and a half) because his fixed salary already compensated him for all straight time hours worked. *Id.* On two separate occasions, Schreckenbach was told in writing that his position "[wa]s considered an exempt position for purposes of federal wage-hour law, which means that [he] would not be eligible for overtime pay for hours worked in excess of 40 in a given workweek." (Doc. No. 24-4,

[2005 Offer Letter and 2006 Offer Letter].) Plaintiff signed both his original offer letter with Precision Tube, and the letter sent by Tenaris once it had acquired Precision Tube, stating he confirmed acceptance of the offer terms. During the entire six years of his employment, Schreckenbach consistently received paychecks that indicated he was being paid a fixed salary when he worked more than forty hours per week.  (Schreckenbach Dep. 22:23-25; 33:15-18, 41:18-22.)  After working more than forty hours and not receiving overtime in his paycheck, Schreckenbach never alerted Tenaris that he believed his paycheck was incorrect.  (*Id*. 42:7-9.)  Finally, Schreckenbach was fully aware that hourly employees clocked in and out to monitor their overtime, yet he never clocked in or out, and was never asked to do so.  (*Id*. 42:10-19.)

Plaintiff argues that the prerequisite to using the FWW method is that there is a "clear mutual understanding" between parties, as set forth in *Samson v. Apollo Resources,* 242 F.3d 629, 636-637 (5th Cir. 2001). Plaintiff argues that his understanding was that he no one ever told him that his salary was intended as payment for his overtime hours, or the equivalent of straight time for all his hours. (Doc. No. 25-1, ¶19.) Instead, Plaintiff understood that he was simply not paid for his overtime hours, and he worked those hours for free in order to keep his job. *Id*.

Plaintiff does not offer evidence that, a reasonable person, in reading the offer letters given to him, would find that his pay was intended to compensate him for only forty hours per week and that additional hours were worked for "free". The plain language of both offer letters and of both parties' conduct make it clear that Plaintiff was to be considered exempt, and that he would receive a fixed salary, regardless of the exact number of hours worked in any given week. Furthermore, even Plaintiff's understanding

that overtime hours were "free" makes it clear he at least understood he would earn a fixed salary, even if he was incorrect about how overtime hours would factor into his overall pay. The FLSA does not require that employees know exactly how their pay is calculated, but simply that the salary covers whatever hours the job may demand in a particular work week. *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 637 (5th Cir. 2001). Thus, the Court finds that despite his assertions to the contrary, Plaintiff had a clear understanding that he would receive a fixed salary for varying hours, and that the FWW method may be used for calculating any overtime.

## IV. CONCLUSION

For the reasons explained above, Defendant's Motion for Partial Summary Judgment (Doc. No. 24) is **GRANTED.** Furthermore, Plaintiff's Motion to Strike and Objections (Doc. No. 27) is **DENIED.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 16th day of January, 2013.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE